

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2008

# USA v. Slaughter

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1405

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Slaughter" (2008). *2008 Decisions.* Paper 860.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/860

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1405
_____

UNITED STATES OF AMERICA

v.

ALFRED SLAUGHTER,
a/k/a "YA-YA"

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cr-00043-5)
District Judge:  Honorable John E. Jones, III
_____

Submitted Under Third Circuit LAR 34.1(a)
April 18, 2008

Before:  SCIRICA, *Chief Judge*, AMBRO and FISHER, *Circuit Judges*.

(Filed: July 10, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Alfred Slaughter appeals his conviction on one count of conspiracy to distribute

and possess with intent to distribute in excess of 50 grams of cocaine base (crack), in

violation of 21 U.S.C. § 846, and one count of possession with intent to distribute in excess of 50 grams of cocaine base (crack) (or aiding and abetting or causing the same), in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. For the reasons that follow, we will affirm the judgment of the District Court.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On July 13, 2002, a police informant purchased crack from Alfred Slaughter and his cousin and co-conspirator, Marvin Starks, at a residence located at 1144 Memorial Avenue in Williamsport, Pennsylvania. Local police then executed a search warrant at the residence. Police therein recovered a total of 63.8 grams of crack: 39.3 grams from a grey Brinks lock box in a bedroom and 24.5 grams from a shoe box in a bathroom. The following February, a multiple-count indictment was returned against Slaughter and four other co-defendants, and a warrant for his arrest was issued.

On May 2, 2003, U.S. Marshals arrested Slaughter at another residence in Williamsport. In Slaughter's proximity at the time of his arrest was an "8 ball" of crack, two keys that fit the Brinks lock box recovered at 1144 Memorial Avenue the previous July, and a travel bag containing a loaded 9mm handgun. On July 24, 2003, a superseding indictment was returned against Slaughter and his co-defendants. After

2

numerous pretrial motions and the trial itself held in November 2005, a jury found Slaughter guilty of the two counts noted in this opinion's introductory paragraph. On January 29, 2007, the District Court sentenced Slaughter to a below-Guidelines sentence of 300 months' imprisonment and 120 months' supervised release. Slaughter's timely appeal followed.

## II.

We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. For a defendant's claim of insufficiency of the evidence, "[w]e must view the evidence in the light most favorable to the government and must sustain a jury's verdict if 'a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offenses.'" *United States v. Rosario*, 118 F.3d 160, 163 (3d Cir. 1997) (quoting *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991)). For an appeal regarding the admissibility of evidence, our review is for abuse of discretion. *United States v. Bobb*, 471 F.3d 491, 497 (3d Cir. 2006).

## III.

### A.

Slaughter first argues that there was insufficient evidence to support his conviction of conspiracy to distribute and possess with intent to distribute in excess of 50 grams of cocaine base (crack). The elements of conspiracy are: "(1) a shared 'unity of purpose,' (2) an intent to achieve a common goal, and (3) an agreement to work together toward the

goal." *Id.* at 494 (citation omitted). These elements can be proven "entirely by circumstantial evidence." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

In this case, the evidence establishing Slaughter's role in a conspiracy to distribute drugs comes largely from Starks' testimony. For example, at trial Starks stated, "I was pretty much [Slaughter's] right-hand man, watch-out man, basically, you know, keep everything okay with his business basically . . . if he had any problems up here, money, if he needed me to bag some drugs up, you know . . . ." Starks testified that he and Slaughter had an arrangement whereby Starks "bagged" the crack for Slaughter. Slaughter on appeal characterizes the arrangement as merely that of buyer-seller, but a reasonable jury certainly could have concluded that the relationship was that of partners who shared a common purpose of drug distribution.

As for whether the amount of crack attributable to Slaughter was in excess of 50 grams, Starks testified that Slaughter was importing approximately 250 grams of crack from Philadelphia to Williamsport each week for a month during the time period charged in the superseding indictment. Further, the search of 1144 Memorial Avenue on July 13, 2002, yielded over 50 grams of crack. When these facts, the circumstances surrounding Slaughter's May 2, 2003 arrest, and the deferential standard of review are all taken into account, we cannot find that there was insufficient evidence to support Slaughter's conspiracy conviction.

B.

Slaughter also argues that there was insufficient evidence to support his possession with intent to distribute (or aiding and abetting the same) conviction. Specifically, Slaughter contends that there was insufficient evidence to establish that he possessed more than 50 grams of crack on July 13, 2002. In establishing a defendant's possession of a controlled substance, "[p]ossession can be actual or constructive, and may be proven through either direct or circumstantial evidence. Constructive possession may be found if the defendant was knowingly in a position, or had the right, to exercise 'dominion and control' over the drug." *Bobb*, 471 F.3d at 497 (internal citation omitted).

Here, over 50 grams of crack were found by police at 1144 Memorial Avenue on July 13, 2002. Slaughter concedes that sufficient evidence connected him to the crack in the lock box (Br. 21), but argues that the crack in the shoe box could not be connected to the crack in the lock box. The evidence at trial, however, "allowed the jury to infer" that the drugs in the two boxes found in close physical proximity, in the context of the temporal proximity of the controlled purchase made just hours before the search, "came from a common source." *United States v. Cunningham*, 517 F.3d 175, 179 (3d Cir. 2008). Therefore, we will not disturb the conviction on this count, either.

C.

Lastly, Slaughter argues that the District Court abused its discretion in prohibiting him from introducing a private investigator's testimony regarding the interchangeability

5

of keys for two other lock boxes of the same model as the lock box in which a portion of the crack was found on July 13, 2002. However, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

Here, the District Court appropriately doubted the qualifications of the private investigator, who had merely purchased two new Brinks lock boxes and keys expressly for Slaughter's trial at some time (over three years) and distance (over forty miles) from the July 13, 2002 search. Indeed, the new keys that the investigator purchased could not open the lock box attributed to Slaughter, and the investigator had no expert knowledge about Brinks lock boxes in general. Moreover, even Slaughter agrees that the testimony at trial was sufficient to establish that the lock box found by police on July 13, 2002, belonged to Slaughter. In any event, the possible inference that another key could open Slaughter's lock box was raised at trial because the new lock boxes and their keys were admitted into evidence and went with the jury to their deliberations. Therefore, the District Court did not abuse its discretion in not admitting the private investigator's testimony above and beyond the already admitted physical evidence.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.